**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| PEDRO SALAS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:26-CV-00056 |
| | § | |
| BRET BRADFORD, ET AL.,[1] | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus, (Dkt. No. 24), and Respondents' Partial Motion to Dismiss for Failure to State a Claim, or Alternatively, Motion for Summary Judgment, (Dkt. No. 27).

The Court finds that Petitioner's deprivation of liberty without constitutionally adequate procedures is a violation of his due process rights, and the failure to provide due process warrants his release. For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus is granted in part. Respondents are ordered to release Petitioner **by May 2, 2026, at 5:00 p.m.** The parties are ordered to notify the Court of the status of Petitioner's release **by May 4, 2026, at 5:00 p.m.**

### I. BACKGROUND

#### A. Factual Background

Petitioner, a citizen of Venezuela, challenges his ongoing detention without a bond hearing and alleges that he cannot be detained as a holder of Temporary Protected Status (TPS). His Petition asserts multiple claims in support of his challenge to detention, including *inter alia* violations of the Fifth Amendment rights to procedural due process and substantive due process. Petitioner entered the United States without inspection in

---

[1] Todd Blanche is automatically substituted for Pamela Bondi in this case under Federal Rule of Civil Procedure 25(d). Markwayne Mullin is automatically substituted for Kristi Noem in this case under the same rule. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

1 / 7

2021 and has remained continuously present in the country since then. (Dkt. No. 27-1).[2] Shortly after entering the United States, Petitioner was apprehended by immigration officials. (*Id.*). He was subsequently released on his own recognizance and served a Notice to Appear. (*Id.*; Dkt. No. 24 at 18; Dkt. No. 24-1 at 9).

Petitioner registered for TPS under the 2023 TPS Designation for Venezuela and obtained approval on April 13, 2025. (Dkt. No. 24-1 at 16). His approval notice reflects that his TPS would be valid until October 2, 2026. (*Id.*). Valid TPS holders may not be detained. 8 U.S.C. § 1254a(d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States.").

On November 22, 2025, Petitioner was arrested in at his Immigration and Customs Enforcement (ICE) check-in. (Dkt. No. 24 at 4). Petitioner has not received a bond hearing since he's been detained, and his motion to set bond was denied for lack of jurisdiction. (*Id.* at 6).

### B. Legal Background

#### *1. Temporary Protected Status for Venezuela*

The TPS statute, Section 1254a, provides a temporary immigration benefit to approved applicants who are noncitizens present in the United States from specific, designated countries. Once a country is designated for TPS by the federal government, nationals of that country may apply for TPS under the designation. If their application is granted, the noncitizen cannot be removed or detained and they can obtain authorization to work during the period of designation. *See* 8 U.S.C. § 1254a(a)(1). However, TPS is temporary. *See* § 1254a(b)(2)(B), (c)(3)(C). TPS can be granted or extended only when specified country conditions exist, as determined by the Secretary of the Department of Homeland Security (DHS). *See* § 1254a(b)(1).

In March 2021, Venezuela was designated for TPS. 86 Fed. Reg. 13574 (Mar. 9, 2021). The 2021 Designation was extended twice. *See* 87 Fed. Reg. 55024 (Sept. 8, 2022); 88 Fed. Reg. 68130 (Oct. 3, 2023). The second extension simultaneously re-designated

---

[2] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

Venezuela for TPS in 2023, allowing Venezuelan nationals who entered after 2021 to register for TPS. 88 Fed. Reg. 68130 (Oct. 3, 2023). After those extensions, the 2021 Designation was set to expire on September 10, 2025, and the 2023 Designation was set to expire on April 2, 2025. *Id.* at 68134.

On January 17, 2025, DHS extended the 2023 Designation through October 2, 2026. 90 Fed. Reg. 5961 (Jan. 17, 2025). The extension was scheduled to become effective on April 3, 2025. *Id.* at 5962. This action also consolidated the 2021 and 2023 TPS Designations. *Id.* at 5963. After a change in the presidential administration, DHS vacated the extension on January 28, 2025, which was published in the Federal Register on February 3, 2025. 90 Fed. Reg. 8805. On February 1, 2025, DHS terminated the 2023 Designation, which was set to expire on October 2, 2026, but not the 2021 Designation, which had only been extended to September 10, 2025. *Id.* at 9042, 9044. The vacatur of the extension and termination of TPS are subject to ongoing litigation, and the Supreme Court has stayed a district court order setting aside these agency actions pending review by appellate courts. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025); *Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026); *Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (Oct. 3, 2025).

### 2. Mandatory Detention Under Section 1225(b)(2)

The Department of Homeland Security (DHS) and Department of Justice (DOJ) released interim guidance in July 2025, announcing a new legal position on detention authorities for noncitizens. The guidance interpreted the mandatory detention provision of Section 235 of the Immigration and Nationality Act (INA), or 8 U.S.C. § 1225, as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether they arrive at a port of entry or enter without inspection. This position was adopted by the Board of Immigration Appeals (BIA) in September 2025. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

In the months following the shift in policy, federal district courts across the country found the Government's interpretation at odds with the text of the statute and ordered bond hearings, or release, for noncitizens subject to mandatory detention under the policy. *See, e.g., Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4, n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). In February 2026, the Fifth Circuit held

3 / 7

that Section 1225(b)(2) applies to all applicants for admission, regardless of whether they are actively "seeking admission" when they are detained. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026). However, *Buenrostro* did not address the validity of due process claims such as those raised by Petitioner in this case. *See, e.g.*, *Bonilla Chicas v. Warden*, No. 5:26-CV-131, 2026 WL 539475, at *4–5 (S.D. Tex. Feb. 20, 2026); *see also Padron Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025), *overruled by Buenrostro-Mendez*, 166 F.4th 494 (explaining the Court's prior statutory interpretation of Section 1225).

### C. Procedural Background

Petitioner filed a petition for a writ of habeas corpus, maintaining that he is entitled to release from detention because of his status as a TPS holder on January 14, 2026. (Dkt. No. 1). In consideration of the issues, the Court held a hearing on March 3, 2026. During the hearing, the Court granted Petitioner leave to file an amended petition. The amended petition is now the instant petition before the Court. (Dkt. No. 24). He brings several claims for relief: violation of the INA for detention as a TPS beneficiary; ultra vires agency action; violation of the INA for misclassification of detention authority; violation of the Fifth Amendment right to procedural due process; violation of the Fifth Amendment right to substantive due process; res judicata based on the declaratory judgment in *National TPS Alliance v. Noem*; violation of the Administrative Procedure Act; and violation of the Suspension Clause. Petitioner requests, among other things, that this Court issue an order requiring Respondents to immediately release him or provide a bond hearing, declare that his detention is unlawful, award reasonable attorney's fees, stay his removal, and grant injunctive relief.

### II. DISCUSSION

Respondents move to dismiss, and alternatively for summary judgment, asserting that (1) the Court should not give preclusive effect to the declaratory judgment in the *National TPS Alliance* case; (2) Petitioner is not a recipient of TPS; and (3) Petitioner is subject to mandatory detention pursuant to *Buenrostro* and that his detention does not violate due process. The Court principally addresses Petitioner's due process claim and finds that his detention violates due process for detention without sufficient procedural

4 / 7

safeguards.[3] The Court incorporates the legal standards and analysis applied in its prior order granting a petition for a writ of habeas corpus under similar facts. *Lopez Moncebais v. Bondi*, No. 5:26-CV-268, slip op. (S.D. Tex. Mar. 27, 2026).

There, this Court found that *Buenrostro* does not foreclose due process challenges to mandatory detention, a noncitizen subject to mandatory detention may bring an as-applied due process challenge to 8 U.S.C. Section 1225(b)(2), Supreme Court precedent does not foreclose that type of challenge, and liberty interests in freedom from detention must be protected by due process of law, including individualized justification for civil detention. *See id.* The Court then applied the balancing test from *Mathews v. Eldridge* and found that the petitioner's procedural due process rights had been violated. *Id.* at 13 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The Court ordered immediate release for the due process violation. *Id.* at 17.[4]

The Court finds that the same reasoning applies to these facts,[5] though the Court adds additional analysis regarding Petitioner's length of presence in the United States, which is factually distinct from *Lopez Moncebais*. Petitioner has resided in the United States since 2021. The Court's reasoning in *Lopez Moncebais* relied on the petitioner's length of residence in the United States in evaluating his liberty interest. Here, the Court finds that Petitioner's residence in the United States since 2021, while shorter than the time period in *Lopez Moncebais*, still creates a sufficient liberty interest to require that his detention is safeguarded with constitutionally adequate procedures, including an individualized determination of whether he should be detained.

Additionally, the Court has previously found that a prior release like Petitioner's strengthens the liberty interest of a noncitizen because their release created an expectation that they would be free from detention during the pendency of their removal

---

[3] Because the Court grants Petitioner's requested relief without consideration of his other claims, the Court will decline to address the merits of those claims. Though, the Court notes that Petitioner's claim for misclassification is foreclosed by *Buenrostro* as he is an applicant for admission subject to Section 1225(b)(2). *Buenrostro-Mendez*, 166 F.4th at 502.

[4] The Court also denied attorney's fees under the EAJA and incorporates that analysis here as well. *Lopez Moncebais*, No. 5:26-CV-268, slip op. at 17.

[5] The Court further notes that Petitioner's claim to TPS and Respondents' arguments against his status as a TPS holder need not be addressed by the Court because the Court is granting relief on an alternate ground. Should Petitioner be re-detained or seek to bring a civil action regarding his alleged TPS benefit, the Court's Order would not preclude further litigation of similar claims.

proceedings. *Bonilla Barrios v. Noem*, No. 5:26-cv-172, slip op. at 4 (S.D. Tex. Apr. 2, 2026). As the Court explained there, liberty interests "may arise from an expectation or interest created by state laws of policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In this case, Petitioner had an expectation, in addition to his residence since 2021, that he would be free from detention or at least entitled to seek bond while his removal proceedings were pending. He was released from detention in 2021 and spent nearly five years out of custody before he was re-detained. That expectation interest strengthens his liberty interest. The Court also notes that several cases analyzed for their persuasive authority in *Lopez Moncebais* similarly considered prior release as a factor strengthening the liberty interest of noncitizens detained under Section 1225(b)(2) without a bond hearing. *See Lopez Moncebais*, No. 5:26-CV-268, slip op. at 7 n.6 (collecting cases).

For these reasons and the reasons discussed in the Court's analysis in *Lopez Moncebais*, the Court finds that Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment, he is entitled to relief, and the appropriate remedy is to order Petitioner's immediate release from custody.

### III. CONCLUSION

For the foregoing reasons, Petitioner's Amended Petition for Writ of Habeas Corpus, (Dkt. No. 24), is **GRANTED in part and DENIED in part**. Petitioner's request for attorney's fees is **DENIED**. Respondents' Partial Motion to Dismiss for Failure to State a Claim, or Alternatively, Motion for Summary Judgment, (Dkt. No. 27), is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody **by May 2, 2026, at 5:00 p.m.**, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release **by May 4, 2026, at 5:00 p.m.** Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than two hours** prior to Petitioner's release from custody. Respondents are ordered to return Petitioner's identity documents and personal effects upon his release.

If Petitioner is re-detained, Petitioner must be afforded procedural due process as

guaranteed by the Due Process Clause of the Fifth Amendment.

A final judgment will follow.

It is so **ORDERED**.

**SIGNED** on May 1, 2026.

_____
John A. Kazen
United States District Judge